UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THOMAS C. ZEMBIEC,

                           Plaintiff,

                                                            <u>DECISION AND ORDER</u>

                                                              09-CV-6075L

                          v.

COUNTY OF MONROE,
MONROE COUNTY SHERIFF'S DEPARTMENT,
PATRICK O'FLYNN, Sheriff of the Monroe
County's Sheriff Department, in his official and
individual capacity,
UNDERSHERIFF GARY CAIOLA
in his official and individual capacity,

                           Defendants.
_____

## INTRODUCTION

Plaintiff Thomas Zembiec brings this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and 42 U.S.C. §§ 1983 and 1985, against the County of Monroe ("County"), the Monroe County Sheriff's Department ("Sheriff's Department"), Sheriff Patrick O'Flynn, and Undersheriff Gary Caiola. Plaintiff, a deputy sheriff employed at the Monroe County Jail ("Jail"), seeks damages for alleged violations of his rights under the ADA and the United States Constitution in connection with certain events that occurred in 2008. Defendants have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff has moved for leave to amend the complaint.

# BACKGROUND[1]

According to the complaint, plaintiff has been employed by the Sheriff's Department since May 1989 as a deputy sheriff jailor. In 2003, plaintiff reported what he believed to be employee misconduct at the Jail to the Internal Affairs office of the Sheriff's Department.

Plaintiff was served with certain disciplinary charges in August and November 2004, after which he filed a complaint in this Court against the County and other defendants, alleging that the charges had been brought in retaliation for plaintiff's allegations of misconduct, in violation of plaintiff's rights to due process and free speech. That lawsuit was settled and dismissed in 2006. As part of the settlement, plaintiff was placed on two years' paid leave. Proposed Amended Complaint ("PAC") (Dkt. #19-3, Ex. B) ¶ 24. The settlement agreement also provided that plaintiff "shall be entitled to all rights and remedies," including any rights that he might have under N.Y. Gen. Mun. L. § 207-c, which provides for paid leave for work-related injuries.[2]

Pursuant to the terms of the settlement, in January 2008 plaintiff was directed to undergo a "fitness for duty" psychological evaluation, "in order to return to work after being on leave for 2 years." Complaint ¶ 20. According to the proposed amended complaint ("PAC"), plaintiff reported to Dr. Boris Shmigel on January 31, 2008. Dr. Shmigel did not clear plaintiff for duty at that time. PAC (Dkt. #21-4) ¶¶ 27-28.

---

[1]Unless otherwise noted, the facts are taken from the allegations of the complaint. Additional alleged facts from the proposed amended complaint–which must be considered in deciding whether plaintiff should be granted leave to amend–are identified as such.

[2]Section 207-c of the New York General Municipal Law provides in part that

[a]ny ... deputy sheriff ... who is injured in the performance of his duties ... so as to necessitate medical or other lawful remedial treatment shall be paid by the municipality ... by which he is employed the full amount of his regular salary or wages from such employer until his disability arising therefrom has ceased, and, in addition such municipality ... shall be liable for all medical treatment and hospital care necessitated by reason of such injury or illness.

On February 8, 2008, plaintiff submitted an employee injury report, alleging that he had been injured (presumably psychologically) on the job. Complaint ¶ 21. The PAC alleges that on February 12, pursuant to an order from his superiors, plaintiff was seen by a psychologist, Jay Supnick, for another evaluation of his fitness for duty. PAC ¶ 31.

According to the proposed amended complaint, when he met with Supnick, plaintiff indicated that he had some concerns about the confidentiality of whatever medical information plaintiff might discuss or divulge during their session. Supnick allegedly told plaintiff that he would speak to someone at the Sheriff's office about plaintiff's concerns. PAC ¶ 37.

On March 6, 2008, plaintiff's supervisor, Jail Superintendent Ronald Harling, informed plaintiff by letter that no decision on his eligibility for 207-c leave would be made unless and until plaintiff signed a release authorizing his treating psychiatrist to release to Supnick, and to discuss with him, plaintiff's psychiatric records. PAC ¶ 39.

Plaintiff alleges that in letters to various officials, including Monroe County Executive Maggie Brooks, Superintendent Harling, and others, he complained about being compelled to release his confidential medical information. According to plaintiff, he was concerned that Supnick, as a psychologist (*i.e.*, a non-physician) would not be under the same constraints on divulging that information as a physician would be. PAC ¶¶ 36, 40. Plaintiff did then sign a release, but he alleges that he only authorized the release of his psychiatric records to Dr. Shmigel. PAC ¶ 41, 42.

Plaintiff alleges that on May 15, 2008, defendant Caiola informed him that plaintiff needed to sign a medical release for his former psychiatrist to release plaintiff's medical records to "Dr. Supnick, Monroe County Sheriff's Physician," and that if plaintiff did not do so, "it may result in denial" of plaintiff's request for 207-c benefits. PAC ¶ 44. Prompted by that communication, on June 2, 2008, plaintiff filed a complaint with the New York State Education Department alleging that Caiola and Supnick had falsely represented Supnick to be a "physician." PAC ¶ 45.

The Education Department ultimately sustained that complaint, and on January 23, 2009, sent Caiola a letter stating that Supnick was not a physician, and that he should not be referred to as such.

PAC ¶ 46. On June 3, however, due to continued "threats" by Caiola concerning denial of his 207-c benefits, plaintiff gave Supnick a release granting him access to records from both plaintiff's past and current psychiatrists. PAC ¶ 53.

Supnick issued a report on July 21, 2008, stating that plaintiff was fit for duty. Supnick concluded that plaintiff was "psychologically fit" for duty, but he did express some concerns about plaintiff's returning to work under the same individuals who were involved in the events that led to the prior lawsuit. PAC ¶¶ 59, 71. Supnick also stated that "[t]his report should be considered a medical record for purposes of handling in accordance with the provisions of the Americans with Disabilities Act (ADA)." Complaint ¶ 24; PAC ¶¶ 68, 69.

Plaintiff saw Dr. Shmigel on July 30. Initially, Shmigel did not clear plaintiff for duty, but later that day he changed his mind, and left a message on plaintiff's home answering machine informing plaintiff that Shmigel was clearing him for full duty effective August 4, 2008. Plaintiff alleges that Dr. Shmigel did so at the direction of Caiola. PAC ¶¶ 61-64.

On or about July 30, plaintiff was ordered to report for duty on August 4, 2008. He called in sick that day, "after a very rough weekend" caused by his stress at the prospect of returning to work. PAC ¶ 65. Harling then called plaintiff at home and told him that he would be charged with insubordination if he did not report to work the next day. Complaint ¶ 29; PAC ¶ 66.

Plaintiff did report to work on August 5, but continued to experience problems with stress and related physical symptoms such as tightness in the chest. He saw various health care providers over the next several days and weeks, and on August 24, 2008, after another visit to Supnick, Supnick determined that plaintiff was "not psychologically fit for duty" and that his "prognosis for recovery [wa]s very poor." PAC ¶ 99. On August 29, 2008, plaintiff's psychiatrist also wrote a report opining that plaintiff was suffering from a "job-related disability" and that "attempts to return to work would exacerbate his symptoms." PAC ¶ 101. Apparently plaintiff was then allowed to remain on leave, although he was charged with sick time during this period.

On September 27, 2008, plaintiff received an anonymous letter at his home, stating that Supnick's July 21, 2008 report had been posted on the computers at the Jail, making it accessible to any computer user in the Jail. The letter also stated that numerous people had read the report, and that some people had printed copies of it. PAC ¶ 102. Plaintiff alleges that an attorney for the county later admitted to plaintiff's union president that the report had been posted on the computers at the Jail, which he termed "a regrettable mistake." PAC ¶ 112.

On September 30, 2008, defendant Caiola informed plaintiff that the Sheriff's Department wanted plaintiff to undergo an independent medical exam ("IME") to determine his fitness for duty. Complaint ¶ 45; PAC ¶ 107. Although plaintiff, through his then-attorney, objected to this in light of the numerous exams that plaintiff had already undergone, on January 17 and 24, 2009, plaintiff underwent an IME by psychiatrist Rory Houghtalen. PAC ¶ 113.

The following month, on February 20, 2009, plaintiff filed the instant lawsuit. The complaint sets forth claims under the ADA and § 1983, based mostly on the publication of plaintiff's medical records on the Jail computers.

On April 8, 2009, Dr. Houghtalen issued his report. PAC ¶ 117. By stipulation of the parties and order of the Court, Dr. Houghtalen's report has been filed under seal, but among his findings was his opinion that plaintiff could return to work under certain conditions, including that he be "insulated from having to relate to individuals with whom he has a real or potentially conflicted relationship as the result of his reports of misconduct," and that plaintiff not be "placed in a position where a supervisor is among the group of individuals directly involved in or affected by the investigations and disciplinary actions related to the misconduct reports that Mr. Zembiec made or that were made against him." Dkt. #29 at 19 ¶ 11.

On May 19, 2009, plaintiff's treating psychiatrist, Dr. Faulkner, "issue[d] a report regarding her review of Dr. Houghtalen's evaluation report," in which Dr. Faulkner stated, "I strongly oppose [plaintiff] returning to work in the Monroe County Sheriff's department in any capacity," because

she believed that plaintiff was "at risk for further retaliation, and that his anticipation of this promotes further psychological trauma." PAC ¶ 119.

Nevertheless, on June 3, 2009, plaintiff was ordered to report to work on June 8. PAC ¶ 120. According to plaintiff, however, the very next day "the Sheriff's physician [apparently Dr. Shmigel] certifie[d] that Plaintiff 'MAY **NOT RETURN** TO WORK.'" PAC ¶ 121.

Plaintiff did not report to work on June 8, and was directed to return to Dr. Shmigel on June 12. This time, Dr. Shmigel cleared plaintiff to return to full duty effective June 15, 2009. PAC ¶ 128. Dr. Shimgel allegedly stated that he had been told by Caiola and Harling that they would abide by Dr. Houghtalen's report, which had set forth certain conditions for plaintiff to return to work. PAC ¶ 129.

On June 15, 2009, plaintiff was directed to report to Staff Services at the Sheriff's Department. He alleges that this order contravened one of the conditions set forth by Dr. Houghtalen, which was that plaintiff should not be placed in a position where any of his supervisors were among the people who had been involved in or affected by the misconduct reports and charges that plaintiff had made, or that had been made against him. PAC ¶ 130. Plaintiff alleges that the supervisor of Staff Services was Commander Michael Radler, who plaintiff alleges had altered certain documents in connection with an earlier investigation concerning plaintiff, as part of an effort to terminate plaintiff. PAC ¶ 131.

Plaintiff did not report to work on June 15. That day, Caiola sent a letter to plaintiff stating that his request for 207-c leave was denied, that he could be charged with insubordination if he did not report to work, and that his pay would be discontinued effective June 22, 2009. PAC ¶ 133. Plaintiff was charged with insubordination and absence from duty, based on his failure to report to work as ordered, on September 1, 2009. PAC ¶ 142. It is not apparent from the complaint what the outcome of that disciplinary proceeding was.

Plaintiff has remained away from work, and he has continued to complain about various matters concerning the Sheriff's Department. In July 2009, he sent a letter to the Monroe County Legislature informing them of his belief that there was some connection between the Sheriff's Department and the Robutrad scandal, which involved a scheme by certain county contract workers to defraud Monroe County and its taxpayers. PAC ¶ 140. On September 8, 2009, plaintiff "expressed" his belief that persons within the Sheriff's Office were engaged in criminal acts, although he does not allege how or to whom he "expressed" that belief. PAC ¶ 144. On September 14, plaintiff sent an email to the Monroe County District Attorney concerning what he believed to be "misconduct at the highest ranks of our department." PAC ¶ 146.

Plaintiff saw Dr. Shmigel again in October 2009. Shmigel allegedly told plaintiff that he was clearing plaintiff to return to work, based on a recent report by Supnick. PAC ¶¶ 147-50. Plaintiff subsequently talked to Supnick, however, and Supnick informed him that the most recent report that he had issued concerning plaintiff was his August 24, 2008 report opining that plaintiff was not fit for duty, and that his prognosis was "very poor." PAC ¶ 152.

The complaint filed in February 2009 asserts three causes of action. The first claim is under the ADA, alleging that defendants violated 42 U.S.C. § 12112(d), which deals in part with confidential medical records. The second cause of action alleges that the publication of plaintiff's medical records on the Sheriff's Department's computers was in retaliation for plaintiff's exercise of his First Amendment rights by exposing corruption within the jail and for bringing his prior lawsuit. The third cause of action asserts a claim of municipal liability against the County, based on the County's alleged "official custom, practice, or policy" of "the bad-faith publication of confidential medical records." Complaint ¶ 62.

The proposed amended complaint sets forth six causes of action. The first alleges that defendants have retaliated against plaintiff for exercising his First Amendment rights, principally by publishing his confidential medical records, but also by denying him 207-c benefits, and ordering

him to return to work in contravention of the recommendations of various medical practitioners including plaintiff's treating psychiatrist.

The second cause of action alleges a violation of plaintiff's right to substantive due process, based on the publication of plaintiff's medical records and defendants' insistence that plaintiff authorize the release of his medical information to a non-physician.

The third cause of action in the proposed amended complaint asserts a claim that defendants violated plaintiff's right to procedural due process, based on defendants' denial of plaintiff's request for 207-c benefits, and his subsequent placement on unpaid leave after he had exhausted his sick leave. Plaintiff asserts that he was not given adequate notice or an opportunity to be heard before these events occurred. PAC ¶¶ 176, 177.

The fourth cause of action alleges that defendants Caiola and Shmigel conspired to deprive plaintiff of his constitutional rights, by coercing him to release his confidential medical information, publishing that information on the Jail computers, denying his request for 207-c leave, and ordering him to return to work, contrary to the opinions of his treating psychiatrist and other medical professionals.

The fifth cause of action asserts a claim of inadequate training and supervision against Sheriff O'Flynn. The sixth cause of action asserts a claim for municipal liability against the County.

## DISCUSSION

**I. Motions for Judgment on the Pleadings under Rule 12(b)(6)**

"In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6)." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). That standard requires the court to accept the factual allegations contained in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Kuck v. Danaher*, 600 F.3d 159, 166 (2d Cir. 2010). At the same time, however, "a plaintiff's obligation ... requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009).

Thus, where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570. A "plausible" entitlement to relief exists when the allegations in the complaint move the plaintiff's claims across the line separating the "conclusory" from the "factual," and the "factually neutral" from the "factually suggestive." *Id.* at 557 n. 5. *See also Iqbal*, 129 S.Ct. at 1950 ("only a complaint that states a plausible claim for relief survives a motion to dismiss"); *accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 58-59 (2d Cir.), *cert. denied*, ___ U.S. ___, 131 S.Ct. 824 (2010).

## II. ADA Claim

Defendants contend that plaintiff's ADA claim is barred because plaintiff never filed an administrative charge. *See Hogans v. Dell Magazines/Penny Press*, 372 Fed.Appx. 148, 149 (2d Cir. 2010). In his response to defendants' motion, plaintiff concedes that the ADA claim should be dismissed, and he has not asserted an ADA claim in the proposed amended complaint. Plaintiff's ADA claim is therefore dismissed.

## III. First Amendment Claim
### A. General Principles

In order to state a First Amendment retaliation claim, a public employee must allege that: (1) he engaged in speech that was constitutionally protected; (2) he suffered an adverse employment action; and (3) there existed a causal connection between the protected speech and the adverse employment action, such that it could be inferred that the speech was a "motivating factor" in the employment action. *See Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 152 (2d Cir.

2006); *Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir. 1999); *Spencer v. Holley Central School Dist.*, ___ F.Supp.2d ___, 2010 WL 3422076, at *2 (W.D.N.Y. 2010).

To state a First Amendment claim–or any claim under § 1983–against a municipality, plaintiff must allege facts showing that "the alleged unconstitutional action implements an official 'policy or custom [of the municipality], whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Morris v. Lindau*, 196 F.3d 102, 111 (2d Cir. 1999) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978)). The municipality itself will be deemed to have caused the injury when either (1) the execution of the governmental policy or custom causes the injury, *Monell*, 436 U.S. at 694, or (2) the act of an employee with final policymaking authority in the particular area involved causes the injury, *see St. Louis v. Praprotnik*, 485 U.S. 112, 121-23 (1988).

> Thus, a
>
> plaintiff may prove the causation element by showing either that the official who is a final policymaker in the area directly committed or commanded the violation of the plaintiff's federal rights, or that while the policymaker himself engaged in "facially lawful ... action," he indirectly caused the misconduct of a subordinate municipal employee. Because respondeat superior liability is not permissible, however, the courts must apply "rigorous standards of culpability and causation ... to ensure that" the indirect-causation theory not result in the municipality's being "held liable solely for the actions of its employee."

*Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (quoting *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 405-07 (1997)). To withstand a municipal defendant's motion to dismiss, then, a § 1983 plaintiff must allege facts which, if proven, would give rise to municipal liability under these standards.

To state a claim against an individual defendant under § 1983, a plaintiff must allege facts demonstrating the individual's personal involvement in the alleged § 1983 violation. "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, ___ U.S. at ___, 129 S.Ct. at 1948. Thus, it is well settled that the personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under

§ 1983. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created or permitted the continuation of a policy or custom under which unconstitutional practices occurred; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the plaintiff's rights by failing to act on information indicating unconstitutional acts were occurring. *Colon*, 58 F.3d at 873.

**B. Application to this Case**

In their initial motion papers in support of their motion to dismiss, defendants do not appear to dispute that plaintiff engaged in protected speech; their motion to dismiss the First Amendment claim focuses instead on issues concerning retaliatory motive, the existence of a municipal policy, and the individual defendants' personal involvement. Specifically, defendants argue that the First Amendment claim should be dismissed because (1) there are no factual allegations that the unidentified person who published plaintiff's psychological examination report was motivated to do so because of plaintiff's exercise of his First Amendment rights; (2) plaintiff fails to allege the existence of a municipal policy that caused the disclosure of his psychological report; and (3) the complaint does not allege personal involvement in the alleged violation by Caiola and O'Flynn.

In their papers opposing plaintiff's motion for leave to amend, defendants also now contend that plaintiff did not engage in any protected speech. According to defendants, plaintiff complained only about his own personal grievances concerning his application for 207-c benefits. *See* Dkt. #26 at 6.

With respect to the latter contention, "[w]hether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 163

(2d Cir. 1999) (citing *Connick v. Myers*, 461 U.S. 138, 147-48 and n. 7 (1983)). *Accord Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008). "Whether or not speech addresses a matter of public concern 'must be determined by the content, form, and context of a given statement, as revealed by the whole record,' and while [the speaker's] motive surely may be one factor in making this determination, it is not, standing alone, dispositive or conclusive." *Sousa v. Roque*, 578 F.3d 164, 175 (2d Cir. 2009) (quoting *Connick*, 461 U.S. at 147-48).

Defendants' argument focuses on plaintiff's complaints concerning the denial of his application for 207-c benefits. Plaintiff's First Amendment claim, however, is not based only on his complaints about that matter, but about his complaints about alleged corruption and misconduct within the Monroe County Sheriff's Department. *See*, *e.g.*, Dkt. #19-3 ¶¶ 40, 49, 160. I find that those allegations are sufficient to allege that plaintiff engaged in speech about matters of public concern, which was protected by the First Amendment. *See*, *e.g.*, *See v. City of Elyria*, 502 F.3d 484, 493 (6th Cir. 2007) (city police officer's statements to FBI alleging corruption within city police department were constitutionally protected as a matter of public concern); *Campbell v. Arkansas Dep't of Corr.*, 155 F.3d 950, 958-59 (8th Cir. 1998) (prison warden's speech to a superior reporting corruption and lack of security was protected).

As to the "adverse action" prong of plaintiff's First Amendment claim, I find that plaintiff has alleged that the posting of Supnick's report on the Jail computers constituted such an action. Plaintiff had already expressed some concerns about disclosure of his medical and psychiatric records, and given the sensitivity of such records, I find that their disclosure could well "deter a person of 'ordinary firmness' from exercising his rights" under the First Amendment, if in fact they were posted on the computers for retaliatory reasons. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004)). Defendants do not appear to contend otherwise.

What is missing here, however, are any allegations tending to show (1) that defendants were responsible for the posting of the report or (2) that the report was posted on the Jail computers in

order to retaliate against plaintiff for his protected First Amendment activity. Even assuming the truth of all of plaintiff's factual allegations, there is no basis in those allegations to support a claim of retaliation based on the publication of Supnick's report.

The PAC alleges that "Supnick's report regarding Plaintiff's fitness for duty was written on July 21, 2008 and ... was sent to Undersheriff Caiola." Dkt. #21-4 ¶ 68. Plaintiff also states that on September 27, 2008, he learned, by means of an anonymous letter, that the report had been posted on the Jail computers. *Id.* ¶ 102. In a letter to plaintiff's union representative dated December 9, 2008, Second Deputy County Attorney Michael E. Davis stated that an attorney for the Sheriff's Department, in response to a request from plaintiff's then-counsel for a copy of Supnick's report, had scanned the report on August 4, 2008, so that she could email a copy of it to him. He stated that in so doing, the attorney had inadvertently left a copy of the report in a computer file that "could be accessed by persons outside the Sheriff's administrative offices." Davis stated that the report was removed from the computer file on August 5, 2008, but that before that was done, some unknown person had accessed the report and printed a copy of it. *Id.* ¶ 112; Dkt. #26-24.³

As stated, under *Twombly* and *Iqbal*, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Iqbal*, ___ U.S. ___, 129 S.Ct. at 1949. Plaintiff's pleadings fail to meet that standard here. While his complaint alleges that plaintiff's "confidential medical information was published on jail computers for all to read," PAC ¶ 160, it does not allege who was responsible for that occurring. To the extent that the complaint implies that Caiola was responsible, the complaint offers nothing more than surmise and

---

³A copy of the December 9, 2008 letter from the county's attorney to plaintiff's then-counsel has been submitted by defendants. The letter is quoted from in the proposed amended complaint. *See* PAC ¶ 112. For purposes of Rule 12(b)(6), the complaint is considered to include any documents incorporated in it by reference, annexed to it as an exhibit, or "integral" to it because it "'relies heavily upon its terms and effect.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *International Audiotext Network, Inc. v. A.T. & T. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). The complaint here does rely on Davis's December 9, 2008 letter, and thus the Court may consider it in deciding the motions before me. Even were the Court not to consider this letter, however, the result here would be the same, since without this letter there is simply *no* indication of how or why Supnick's report was placed on the Jail computers.

speculation. While the Court must accept a complaint's factual allegations as true, in assessing its facial validity, that principle does not apply to purely conjectural allegations. *See Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) ("[P]leadings that ... are no more than conclusions[] are not entitled to the assumption of truth") (quoting *Iqbal*, 129 S.Ct. at 1951). *See also Smith v. Florida Dep't of Corrections*, 375 Fed.Appx. 905, 911 (11th Cir. 2010) (affirming dismissal of retaliation claim, where plaintiff's "complaint ma[de] only conclusory allegations of a retaliatory motive" and "d[id] not allege facts sufficient to raise that conclusion above the speculative level"); *Lott v. Children's Hosp. of Philadelphia*, No. 10-04088, 2010 WL 5186167, at *2 (E.D.Pa. Dec. 22, 2010) (stating that plaintiff's allegation that she "believe[d] ... that her termination was in retaliation for her prior complaint of discrimination," was "precisely the kind of conclusory allegation[ ] that the Supreme Court has found to be insufficient to state a claim under Rule 12(b)(6)") (internal quote omitted); *Caldwell v. Jackson*, No. 1:03CV707, 2009 WL 2487850, at *9 (M.D.N.C. Aug. 11, 2009) (where plaintiff admitted that she did not know who left anonymous threatening notes on her chair, vandalized her car in the employee parking lot, or tampered with her work computer, "th[o]se acts c[ould ]not be imputed to [her employer], and she cannot make out a prima facie case of retaliation based on acts by anonymous persons").

Although plaintiff argues that he has alleged other acts of retaliation as well, plaintiff has again failed to allege facts showing that they were motivated by retaliation. Besides the publication of Supnick's report, the proposed amended complaint identifies three actions that he claims were retaliatory: "being improperly denied 207-c benefits, being compelled to return to the sheriff's department, [and] being subject to undue discipline ... ." PAC ¶ 161. From the factual allegations of the complaint, it is apparent that there was a long-running dispute between plaintiff and defendants over whether plaintiff could return to work and whether he was eligible for 207-c leave. All of these acts relate to that dispute, and there are no factual allegations showing that retaliation had anything to do with these matters.

As explained above, the parties' settlement of plaintiff's prior lawsuit provided that plaintiff would be given two years' paid leave beginning in February 2006. Beginning around the end of that two-year period, defendants directed plaintiff to undergo several examinations to determine if he was fit to return to duty. There followed a long period of wrangling between plaintiff and defendants over whether plaintiff was able to report back to work or not. It was in the course of that dispute that plaintiff was ordered back to work in June 2009, and later charged with insubordination for not following that order.

Throughout that period, according to the complaint, plaintiff continued to insist that he was not fit to return to duty, while defendants continued to require him to undergo further evaluations by various medical professionals. Nothing in the *factual* allegations of the complaint suggests that plaintiff's complaints about corruption or misconduct in the Sheriff's Department played a role in any of defendants' actions in this regard.

Although plaintiff alleges that he continued to engage in protected activity (such as filing this lawsuit) during that period, that is not enough. There must be facts alleged that indicate that plaintiff's protected activity had some causal nexus to the insubordination charges or other alleged adverse acts. Otherwise, an employee would be able to insulate himself from all disciplinary action simply by engaging in protected activity. That is not the law, however. *See Wallace v. Sparks Health System*, 415 F.3d 853, 858 (8th Cir. 2005) (filing an EEOC complaint does not insulate an employee from discipline for legitimate reasons); *Reynolds v. Barrett*, ___ F.Supp.2d ___, 2010 WL 3835870, at *14 (W.D.N.Y. Oct. 4, 2010) ("The fact that [plaintiff] filed grievances during this stretch of time does not, standing alone, transform his unsubstantiated claims into viable retaliation claims, nor can it shield him from legitimate, nondiscriminatory discipline or adverse job actions").

**IV. Due Process Claims**

In his proposed amended complaint, plaintiff seeks to assert both substantive and procedural due process claims. The former is based on defendants' alleged violation of plaintiff's right to

privacy with respect to his medical records, while the procedural claim is based on the denial of plaintiff's request for 207-c leave.

Neither of these states a viable cause of action. As to the substantive due process claim, as stated, there are no factual allegations indicating that defendants had a hand in posting plaintiff's medical records on the Jail computers.[4] Although plaintiff also contends that defendants' insistence that plaintiff disclose his medical information to a non-physician (Supnick) "shock[s] the conscious [sic]," Dkt. #21-4 ¶ 168, I find as a matter of law that "the conduct alleged is not sufficiently shocking, in a constitutional sense, to give rise to a substantive due process claim," *MacFall v. City of Rochester*, ___ F.Supp.2d ___, 2010 WL 4236803, at *12 (W.D.N.Y. 2010) (quoting *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005)), particularly since plaintiff himself had put his mental state at issue by seeking disability leave.

With respect to the procedural due process claim, there is support for the assertion that "the right of a disabled officer to receive disability payments pursuant to General Municipal Law § 207-c constitutes 'a property interest giving rise to procedural due process protection, under the Fourteenth Amendment, before those payments are terminated.'" *Ramos v. Alicia Court Enterprises, Inc.*, 58 A.D.3d 709, 710 (2d Dep't) (quoting *Matter of Park v. Kapica*, 8 N.Y.3d 302, 310 (2007)), *leave to appeal dismissed*, 12 N.Y.2d 882 (2009). The Court of Appeals for the Second Circuit has held, however, that "[a]s long as the employee is receiving a paycheck equivalent to his normal salary, that

---

[4]Based on the allegations of the complaint, it does not appear to have been a secret within the Sheriff's Department that plaintiff was away from work because of the psychological effect upon him of his prior difficulties with his superiors within the department. While the posting of this report may have met the standard for an "adverse action" for purposes of plaintiff's First Amendment claim, then, this act falls short of the sort of conscience-shocking act necessary to support a substantive due process claim. *See Bell v. Johnson*, 308 F.3d 594, 600 (6th Cir. 2002) (explaining difference between adverse-action and "shocks the conscience" standards for First Amendment retaliation claims and substantive due process claims); *see, e.g.*, *Painter v. Campbell County Bd. of Educ.*, 417 F.Supp.2d 854, 862-64 (E.D.Ky. 2006) (plaintiff teacher's demotion constituted an adverse action, for purposes of her First Amendment claim, but was not "conscience-shocking," for purposes of her substantive due process claim). Regardless of whether it could meet the "shocks the conscience" standard, however, this claim must be dismissed for the simple reason that plaintiff has not alleged facts that would support a finding of liability on the part of the defendants, as explained above.

the employee is drawing down his sick leave is a bookkeeping entry with no pecuniary effect," and thus he is not deprived of any property right. *O'Connor v. Pierson*, 426 F.3d 187, 200 (2d Cir. 2005). Plaintiff's allegation that he was forced to use up his sick leave, because he was denied 207-c leave, therefore does not implicate any protected property interest.

*Ramos* and similar cases dealt with the *termination* of 207-c benefits that an employee had previously been receiving. Even assuming *arguendo* that due process protection attached to the *denial* of plaintiff's request for § 207-c benefits, however, plaintiff has not alleged facts showing that he was denied adequate process. It appears that plaintiff had grievance procedures available to him to challenge that denial, that he also could have availed himself of the procedures provided by CPLR Article 78, *see Heaton v. Monroe County*, 78 A.D.3d 1501 (4th Dep't 2010), *D'Accursio v. Monroe County*, 74 A.D.3d 1908 (4th Dep't), *leave to appeal denied*, 15 N.Y.3d 710 (2010), and that in fact plaintiff did avail himself of those procedures. Defendants have submitted a copy of a decision issued on May 18, 2010 by New York State Supreme Court Justice Harold Galloway, in an action brought by plaintiff to review the denial of his claim for 207-c benefits. Justice Galloway found that the Sheriff's Department's August 8, 2008 denial of benefits on plaintiff's first application for benefits was not arbitrary and capricious, based on the medical evidence at that time, but that the department's June 15, 2009 denial of plaintiff's second application was arbitrary and capricious. Justice Galloway found that plaintiff was entitled to 207-c benefits for certain periods, and he ordered appropriate relief, consistent with those findings. Under these circumstances, there is no basis for a procedural due process claim. *See Horne v. Buffalo Police Benev. Ass'n, Inc.*, No. 07-CV-781, 2010 WL 2178813, at *7 (W.D.N.Y. May 28, 2010) ("Assuming plaintiff had a property interest in her IOD [injured on duty] status and was entitled to a hearing, a proceeding under Article 78 challenging the rescission of IOD status and the denial of benefits under General Municipal Law § 207-c offered an adequate post-deprivation remedy").

**V. Civil Rights Conspiracy**

The fourth cause of action in the proposed amended complaint alleges that defendants Caiola and Shmigel conspired to deprive plaintiff of his constitutional rights, by coercing him to release his confidential medical information, publishing that information on the Jail computers, denying his request for 207-c leave, and ordering him to return to work, contrary to the opinions of his treating psychiatrist and other medical professionals. For the reasons already stated, plaintiff has failed to allege facts sufficient to support such claims.

Furthermore, plaintiff's allegations are simply not sufficient to make out a civil rights conspiracy claim under 42 U.S.C. § 1985. To make out a facially valid civil rights conspiracy claim under that statute, a plaintiff must allege: (1) a conspiracy (2) for the purpose of depriving the plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby the plaintiff was injured in his person or property or deprived of a right or privilege of a citizen. *See United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983); *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007). In addition, the conspiracy must be motivated by some class-based animus. *Ricci v. DeStefano*, 530 F.3d 88, 121 (2d Cir. 2008); *Maloney v. Social Sec. Admin.*, 517 F.3d 70, 73 (2d Cir. 2008).

Plaintiff's conspiracy allegations do not meet that standard. Plaintiff has alleged that defendants violated his constitutional rights, and has then simply tacked on a conclusory allegation that those violations were committed pursuant to a conspiracy. Conspiracy allegations couched in such "generic and conclusory terms" are insufficient to make out a § 1985 claim. *Hawkins v. County of Oneida*, 497 F.Supp.2d 362, 379 (N.D.N.Y. 2007). *See Walker v. Jastremski*, 430 F.3d 560, 564 n. 5 (2d Cir. 2005) ("conclusory or general allegations are insufficient" to state a claim for conspiracy to violate the plaintiff's civil rights), *cert. denied*, 547 U.S. 1101 (2006); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("[a] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a

motion to dismiss") (quoting *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993)). In addition, plaintiff has failed to allege any race- or class-based animus as required to support a § 1985 conspiracy claim. Plaintiff's proposed amended complaint therefore fails to state a valid civil rights conspiracy claim. *See Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006); *Davis v. Travis*, No. 07 Civ. 3047, 2008 WL 5191074, at *4 (S.D.N.Y. Dec. 3, 2008).

## VI. Supervisory and Municipal Liability

Plaintiff also seeks to assert claims against defendant O'Flynn, based on his supervisory role within the Sheriff's Department, and against the County, based on a theory of municipal liability under *Monell*. Since I have found the allegations insufficient with respect to the underlying violations, I find no basis for a claim against O'Flynn or the County. In addition, plaintiff's conclusory allegations that O'Flynn and the County maintained a policy of publishing confidential medical records and retaliating against employees, absent some factual allegations in support of those assertions, also render these claims defective and subject to dismissal. *See Smith v. Goord*, No. 08-CV-1364, 2011 WL 477685, at *4 (E.D.N.Y. Aug. 9, 2010) (plaintiff's "supervisory liability allegations amount to nothing more than a claim based on the theory of *respondeat superior*, which ... is insufficient to state a valid claim under § 1983"); *Irish v. The City of New York*, No. 09 CIV 5568, 2010 WL 5065896, at *5 (S.D.N.Y. Dec.6, 2010) ("Plaintiff's speculative and conclusory allegations of an unlawful custom and practice are insufficient to support a claim of municipality liability based upon *Monell*"); *Fanelli v. Town of Harrison*, 46 F.Supp.2d 254, 259 (S.D.N.Y. 1999) ("[P]laintiff's boilerplate allegation that the [municipal defendant] failed to train and supervise its police officers ... is insufficient to sustain the action").

## VII. Plaintiff's Motion for Leave to Amend

Since all of the claims presented in plaintiff's proposed amended complaint would be subject to dismissal for failure to state a claim, plaintiff's motion for leave to amend is denied as futile. *See*

*Foster v. Humane Society of Rochester and Monroe County, Inc.*, 724 F.Supp.2d 382, 397 (W.D.N.Y. 2010) ("It is well established that a district court may deny leave to amend where the amendment would be futile") (citations omitted).

## CONCLUSION

Defendants' motion for judgment on the pleadings (Dkt. #14) is granted, and the complaint is dismissed.

Plaintiff's cross-motion for leave to amend or correct the complaint (Dkt. #21) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
February 22, 2011.